## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILLIP A. FREDERICK, JR.,** | : | **CIVIL ACTION NO. 1:13-CV-00661** |
| **BRIAN MARHON, and MICHAEL** | : | |
| **MESKUNAS,** | : | **(Chief Judge Conner)** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | |
| | : | |
| **ANTHONY F. BARBUSH,** | : | |
| | : | |
| **Defendant.** | : | |

### MEMORANDUM

Plaintiffs Phillip A. Frederick, Michael Meskunas, and Brian Marhon filed

the above-captioned action, alleging 42 U.S.C. § 1983 claims for violation of

procedural due process and equal protection under the Fourteenth Amendment, as

well as common law claims for wrongful discharge and promissory estoppel.

Presently before the court is defendant Anthony Barbush's motion to dismiss (Doc.

18) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief may be granted.  For the reasons that follow, the court will grant the

motion in part and deny it in part.

### I.    Factual and Procedural Background[1]

At all times relevant to the amended complaint, plaintiffs Phillip A.

Frederick, Michael Meskunas, and Brian Marhon (collectively, "Plaintiffs") were

_____

[1] The instant motion to dismiss comes before the court pursuant to Federal
Rule of Civil Procedure 12(b)(6).  Accordingly, the court will "accept all well-pleaded
facts in the complaint as true and view them in the light most favorable" to the
plaintiffs.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

employed by the Commonwealth of Pennsylvania's House of Representatives ("PA House").  (Doc. 11 ¶¶ 9, 11-12).  Phillip A. Frederick ("Frederick") was the Director of Security and Safety—Sergeant at Arms and supervised approximately 33 Legislative Security Officers ("LSO"), who provide security to the members of the PA House.  (Id. ¶¶ 9-10).  Michael Meskunas ("Meskunas") was the Assistant Director of Security and Safety—Sergeant at Arms, and Brian Marhon ("Marhon") was an LSO.  (Id. ¶¶ 11-12).  Defendant Anthony Barbush ("Barbush") is Chief Clerk of the PA House and allegedly a member of the Bipartisan Management Committee ("BMC"), which directly supervises Frederick as Sergeant at Arms.  (Id. ¶¶ 8, 13).

On or about April 20, 2012, Barbush became aware that Marhon had a criminal record[2] and asked Frederick for further information regarding Marhon's criminal history.  (Id. ¶ 15).  Frederick responded that Marhon's criminal record involved past incidents outside of work and did not affect Marhon's ability to act as an LSO, including carrying a firearm.  (Id. ¶ 16).  Barbush questioned why he was not previously informed of Marhon's criminal history and purportedly accused Frederick of hiding the information.  (Id. ¶ 17).  Frederick denied any cover up.  (Id. ¶ 18).  He explained to Barbush that, in accordance with internal policy, Marhon's fingerprints were taken in 2007, and that the results indicated that Marhon was allowed to possess a firearm.  (Id.)  In 2007, there was no policy requiring further

---

[2] Plaintiffs do not indicate how Barbush became aware of Marhon's criminal history prior to the incidents described in the amended complaint.

background checks; LSOs were only required to report any contact with the police. (Id. ¶¶ 19-20). According to the amended complaint, Marhon complied with this policy and informed Meskunas of his criminal history, who in turn reported the information to Frederick.[3] (Id. ¶¶ 20, 47). During their initial conversation about Marhon's criminal record, Barbush denied Frederick's request to conduct an investigation into the issue per office protocol. (Id. ¶ 21). Instead, Barbush purportedly pressured Frederick into placing Marhon on administrative leave. (Id. ¶ 22). Marhon then requested a meeting with Barbush, but Barbush denied the request. (Id. ¶ 23).

Barbush subsequently instructed Frederick to fire Marhon as a result of Marhon's criminal record. (Id. ¶¶ 24, 27). Frederick advised Barbush that other LSOs also had criminal records and that there was no policy requiring termination for a criminal record. (Id. ¶ 28). Nevertheless, Barbush insisted upon the termination and instructed Frederick to reference Marhon's criminal history as the reason for termination. (Id. ¶ 29). According to Frederick, Barbush also ordered Frederick not to speak to anyone else about the matter. (Id.) Upon approving the termination letter, Barbush allegedly informed Frederick that the BMC no longer trusted or had confidence in Frederick, but that such trust and confidence would be restored if LSOs were no longer permitted to carry firearms. (Id. ¶¶ 31-32).

---

[3]At all relevant times, Meskunas was Marhon's immediate supervisor, and Frederick was Meskunas's immediate supervisor. (Doc. 11 ¶ 14).

The BMC previously authorized LSOs to carry firearms pursuant to an "Action in Writing."[4]   (Id. ¶ 33; see id., Ex. A).   The Action in Writing states, in relevant part:

> RESOLVED, The issuances and use of weapons and detention powers be given to the House Legislative Security Officers, along with the establishment of corresponding training curriculum, reviewed by the Chief Clerk and approved by the Bipartisan Management Committee, with officer certification from an established authority; and
>
> RESOLVED, That all continuing legal requirements regarding the issuance of weapons and detention powers be approved by the Chief Clerk prior to authorization by the Director of House Security and Safety Department for any officer to carry a weapon in the line of duty.

(Id., Ex. A).

On April 26, 2012, Barbush summoned Frederick and two of Frederick's subordinates[5] into his office and again accused Frederick of covering up Marhon's criminal record.   (Id. ¶¶ 36-37).   Frederick presented Barbush with a memorandum requesting that the BMC affirm its Action in Writing permitting LSOs to carry firearms or issue a new Action in Writing withdrawing firearms from the LSOs.   (Id. ¶¶ 35, 38).   In response, Barbush directed Frederick to take away all firearms from the LSOs without formal action from the BMC.   (Id. ¶ 38).   As a direct result of "constant pressure and veiled threats" and "persistent false accusations" from

---

[4] An "Action in Writing" is an action taken by the BMC outside of a formal meeting that has the effect of an action taken at a formal meeting.   (See Doc. 19 at 5).

[5] The amended complaint does not identify the two subordinates present at the meeting in Barbush's office.

Barbush, Frederick submitted his resignation letter the next day and resigned effective May 15, 2012.  (Id. ¶¶ 39-40).

After he received Frederick's resignation letter, Barbush refused to discuss with Frederick the issues underlying his resignation, and Barbush appointed Carl Barnhardt as Frederick's replacement.  (Id. ¶¶ 41-43).  Barbush later called Mr. Barnhardt and Meskunas into his office to discuss the issue of Marhon's criminal record.  (Id. ¶¶ 44-48).  Barbush intimated that Frederick had "thrown [Meskunas] under the bus," and asked Meskunas if Frederick knew about Marhon's criminal record.  (Id. ¶¶ 45-46).  Meskunas responded that Marhon had informed Meskunas personally about his criminal history, and that Meskunas had informed Frederick as required by internal policy.  (Id. ¶ 47).  Barbush purportedly responded by accusing Meskunas of covering up Marhon's criminal history.  (Id. ¶ 48).  Soon thereafter, Mr. Barnhardt instructed Meskunas to either resign or be fired.  (Id. ¶ 49).  Meskunas requested a meeting with Barbush, but Barbush denied his request.  (Id. ¶ 50).  Meskunas elected to resign under duress effective May 31, 2012.  (Id. ¶ 51).

According to the parties, the BMC previously promulgated an employee manual titled Personnel Policies and Procedures Manual ("Manual").  (See Doc. 22-2).  The Manual includes a procedure for employee discipline and a right to due process, enabling employees to raise complaints to the Chief Clerk and to appeal decisions to the BMC.  (Id. at 5-6).  Upon receipt of the Manual, Plaintiffs each signed an acknowledgment, stating that:

[N]othing contained in the Manual . . . should be interpreted or construed as conferring employment for a specific term or as an employment contract.   I further understand and agree that my employment is terminable "at-will" and that both the BMC and I each have the right to discontinue the employment relationship at any time and for any reason.

(See Doc. 19-2).[6]

On March 12, 2013, Plaintiffs filed a complaint (Doc. 1) against Barbush, alleging 42 U.S.C. § 1983 claims for violation of procedural due process and equal protection under the Fourteenth Amendment, as well as common law claims for wrongful discharge.  In response to Barbush's first motion to dismiss (Doc. 4), Plaintiffs filed the amended complaint on May 28, 2013, with an additional claim for promissory estoppel.  (Doc. 11).  On June 11, 2013, Barbush filed the instant motion to dismiss (Doc. 18) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  The motion is fully briefed and ripe for disposition.

---

[6] Plaintiffs assert that, for purposes of the Rule 12(b)(6) motion, the court should consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." (Doc. 22 at 10-11 (quoting Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004))).  Because the acknowledgments were not attached to the complaint, Plaintiffs argue that the court should not consider them at this stage of litigation.  (Id. at 11).  However, the court may properly consider authentic documents upon which a complaint is based when such documents are attached to the motion to dismiss.  See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993); Goodwin v. Elkins & Co., 730 F.2d 99, 104 n.9 (3d Cir. 1984). In this case, all parties ask the court to consider portions of the Manual because each of Plaintiffs' claims clearly rely on the provisions of the Manual.  (See, e.g., Doc. 11 ¶¶ 54, 60, 62, 96-97; Doc. 19 at 4 n.2, 11-12; Doc. 22 at 9-12).  Therefore, the court will consider the Manual and the acknowledgments as necessary herein.

6

## II.    <u>Jurisdiction and Legal Standard</u>

The court has jurisdiction over the instant matter because the complaint presents a question of federal law.  <u>See</u> 28 U.S.C. § 1331.  Plaintiffs allege that Barbush deprived them of constitutional rights under color of state law.  <u>See</u> 28 U.S.C. § 1343(a)(3).  The court also exercises supplemental jurisdiction over the common law claims for wrongful discharge and promissory estoppel.  <u>See</u> 28 U.S.C. § 1367.  These claims are related to and share a "common nucleus of operative facts" with the federal law claims, thus forming part of the same case or controversy.  <u>Lyon v. Whisman</u>, 45 F.3d 758, 759-60 (3d Cir. 1995) (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see</u> <u>also</u> <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits to the complaint and items appearing in the record of the case."

<u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994);

<u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir.

1993).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

<u>Phillips</u>, 515 F.3d at 232 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007)). To test the sufficiency of the complaint, the court must conduct a three-

step inquiry. <u>See</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130-31 (3d Cir. 2010).

In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675 (2009)). Next, the

factual and legal elements of a claim should be separated; well-pleaded facts must

be accepted as true, while mere legal conclusions may be disregarded. <u>Id.</u>; <u>see</u> <u>also</u>

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court

isolates the well-pleaded factual allegations, it must determine whether they are

sufficient to show a "plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing

<u>Twombly</u>, 550 U.S. at 556); <u>Twombly</u>, 550 U.S. at 555 (requiring plaintiffs to allege

facts sufficient to "raise a right to relief above the speculative level"). A claim "has

facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." <u>Iqbal</u>, 556 U.S. at 678. When the complaint fails to present a *prima facie*

case of liability, courts should generally grant leave to amend before dismissing a

complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002);

Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.  **Discussion**

In the instant motion, the court must resolve whether Plaintiffs sufficiently

allege claims under 42 U.S.C. § 1983 for (1) deprivation of property or liberty

interests without due process of law and (2) denial of equal protection in violation of

the Fourteenth Amendment.  The court must also determine whether Plaintiffs

may allege common law claims for wrongful discharge and promissory estoppel

against Barbush.  The court will address these issues *seriatim.*

### A.    **Section 1983**

Section 1983 of Title 42 of the United States Code provides a cause of action

to redress violations of federal law committed by state officials.  See 42 U.S.C.

§ 1983.  Section 1983 is not a source of substantive rights, but merely a method for

vindicating those rights otherwise protected by federal law.  Gonzaga Univ. v. Doe,

536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To

establish a claim under Section 1983, the plaintiff must show a deprivation of a

"right secured by the Constitution and the laws of the United States . . . by a person

acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough

of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Barbush does not dispute Plaintiffs'

contention that, at all times relevant to the complaint, Barbush was "acting under

color of state law."  (Doc. 11 ¶¶ 55, 71, 102, 118, 148, 164).

In the case *sub judice*, Plaintiffs allege that Barbush violated their rights under the Fourteenth Amendment by depriving them of their employment and reputations without due process of law, and by disciplining them differently than similarly situated individuals for arbitrary reasons.  Barbush first moves to dismiss the procedural due process claims because Plaintiffs do not sufficiently allege that Barbush deprived them of either a protected property interest in their employment or a liberty interest in their reputations.  (Doc. 19 at 912; Doc. 24 at 2-7).  Barbush also seeks to dismiss the equal protection claims because Plaintiffs may not raise a protected-class or class-of-one claim, nor do Plaintiffs adequately plead the elements of a selective enforcement claim.  (Doc. 19 at 12-13; Doc. 24 at 7-11).  The court will address the procedural due process claims and the equal protection claims separately.

   **i.**  ***Procedural Due Process***

The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.  To prevail on a Section 1983 procedural due process claim, a plaintiff must demonstrate that (1) he or she was deprived of a protected liberty or property interest under the Fourteenth Amendment, and that (2) the procedures afforded him or her failed to comport with the requirements of due process.  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  The issue in this case is only

whether Barbush deprived Plaintiffs of any protected property interest or liberty interest.

### a.   **Property Interest**

In the amended complaint, Plaintiffs assert that Barbush deprived them of a property interest in their employment with the PA House.  (Doc. 11 ¶¶ 64, 111, 156-57).  A property interest protected by the Fourteenth Amendment exists only if the plaintiff has "a legitimate claim of entitlement" to the interest.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); Hill, 455 F.3d at 234; Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005) (stating that property interest in employment requires entitlement to continued employment).  Property interests entitled to constitutional protection are created by other law, such as state law.  Roth, 408 U.S. at 577 (holding that property interests derive from independent sources such as state law); Hill, 455 F.3d at 234 (observing that the existence of a property interest is "a question answered by state law").  In the instant matter, Pennsylvania law governs whether Plaintiffs had a protected property interest in their employment.  See Dee v. Borough of Dunmore, 549 F.3d 225, 229-30 (3d Cir. 2008); Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 316 n.9 (M.D. Pa. 2004).

Under Pennsylvania law, property interests subject to constitutional protection arise in three ways.  First, the General Assembly may create a protected property interest through legislative action or authorization.  See Aguilar v. Pa. Apple Mktg. Program, No. 1:05-CV-0804, 2006 WL 167820, at *6 (M.D. Pa. Jan. 19, 2006) (observing that property rights may be created through legislative action);

11

Pivarnik v. Commonwealth, Dep't of Transp., 474 A.2d 732, 734 (Pa. Commw. Ct. 1984) (citing Scott v. Phila. Parking Auth., 166 A.2d 278, 280-81 (Pa. 1960)) ("In Pennsylvania, public employees gain an enforceable expectation of continued employment in their jobs through legislative action.").  Second, a protected property interest may emerge from a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits.  See Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991) (holding that contracts granting protected status create property rights); see also Linan-Faye Constr. Co. v. Housing Auth. of Camden, 49 F.3d 915, 932 (3d Cir. 1995) (stating that contracts granting protected status receive due process protection); Aguilar, 2006 WL 167820, at *6 (same); Myers v. Penn Twp. Bd. of Comm'rs, 50 F. Supp. 2d 385, 390 (M.D. Pa. 1999) (same).  Finally, an employment contract permitting dismissal only for cause will create a property interest.  See Unger, 928 F.2d at 1399 (summarizing protection conferred on employment contracts terminable only for cause); see also Linan-Faye, 49 F.3d at 932 (extending procedural due process protection to employment contracts that require cause for termination);  Aguliar, 2006 WL 167820, at *6 (same); Myers, 50 F. Supp. 2d at 390 (same).  The amended complaint does not allege the existence of an employment contract granting protected status or permitting dismissal only for cause; therefore, Plaintiffs have a protected property interest in their employment only in the event that legislative action has created it.

Public employment with the Commonwealth of Pennsylvania is at-will unless the General Assembly has enacted legislation altering that status for particular positions.  See Knox v. Bd. of Sch. Dirs. of Susquenita Sch. Dist., 888 A.2d 640, 647-48 (Pa. 2005) (stating that absent legislative action, public employment in Pennsylvania is at will); Scott, 166 A.2d at 281 ("Tenure in public employment . . . is . . . a matter of legislative grace.").  Pennsylvania municipalities and agencies have no independent power to alter the at-will status of their employees without enabling legislation.  See Elmore, 399 F.3d at 282-83 ("[A] local government in Pennsylvania cannot provide its employees with tenure status unless there exists express legislative authority for doing so."); Dobson v. Northumberland Cnty., 151 F. App'x 166, 168 (3d Cir. 2005).  Any attempt to alter an employee's status, including through personnel manuals, has no legal effect.  See Elmore, 399 F.3d at 283 (holding that even if municipality intended to confer "just cause" status on its office manager, it had no authority to do so under Pennsylvania law).

In Short v. Borough of Lawrenceville, 696 A.2d 1158 (Pa. 1997), the Pennsylvania Supreme Court reaffirmed the maxim that state agencies lack the power to alter the at-will status of their employees.  The court opined:

> Commonwealth authorities and agencies do not have the power to enter into contracts of employment that contract away the right of summary dismissal since the power to confer tenure must be expressly set forth in [] enabling legislation. . . . Moreover, an employee handbook or personnel manual issued by a Commonwealth agency is not a legislative action in itself and cannot be considered a contract guaranteeing a property right in employment unless the legislature has so provided. . . .  [T]he Borough's personnel manual cannot contract away the right of summary dismissal.

13

Short, 696 A.2d at 1158 (citations omitted); accord Dobson, 151 F. App'x at 169

(concluding that municipality's employee handbook granting due process rights

prior to termination "does not have any legal effect"); Aguilar, 2006 WL 167820, at

*6 ("[A] Commonwealth agency's policies and by-laws are not legislative action and

cannot be considered a contract guaranteeing a property right in employment

unless the [General Assembly] has so provided.").

By definition, at-will employment status allows a governmental entity to

terminate employment at any time and without notice.  See Knox, 888 A.2d at 647

(citation omitted) (reiterating that an employer may terminate an at-will employee

"with or without cause, at pleasure").  Accordingly, "[t]he decisional law is clear

that an at-will employee does not have a legitimate entitlement to continued

employment because she serves only at the pleasure of her employer." Elmore, 399

F.3d at 282; see Bell v. Lackawanna Cnty., 892 F. Supp. 2d 647, 658 n.8 (M.D. Pa.

2012) ("[A]t-will employees . . . have no property interest in their positions and, thus,

have no due process rights prior to termination.").

In the case at bar, Plaintiffs assert that the employment at-will doctrine does

not apply because the PA House delegated to the BMC the power to make rules and

regulations regarding personnel policies and procedures, job classification, and pay

plans for all PA House employees and officers.  See 46 PA. STAT. ANN. § 42.121b(b).

Indeed, the statutory provision delegating power to the BMC specifically states that

the BMC's "regulations shall have the force and effect of law." Id.  Plaintiffs

contend that the BMC exercised its statutory power to publish the Manual, which

14

requires compliance with certain disciplinary procedures and grants employees the

right to due process.  (Doc. 22 at 9-10).

      This argument is without merit.  It is well-settled that an agency's regulations

have the force and effect of law only when properly enacted under the

Commonwealth Documents Law ("CDL").  Burstein v. Prudential Prop. & Cas. Ins.

Co., 809 A.2d 204 (Pa. 2002) (citing Borough of Pottstown v. Pa. Mun. Ret. Bd., 712

A.2d 741, 743 (Pa. 1998)).  The CDL requires the agency to provide notice of a

proposed rule or regulation to the public, receive comments from interested parties,

and hold hearings when appropriate.  Pa. Mun. Ret. Bd., 712 A.2d at 743; see 45 PA.

STAT. ANN. §§ 1201, 1202.  If the agency fails to promulgate its rule or regulation in

accordance with the CDL, courts will declare it a nullity.[7]  See Nw. Youth Servs. v.

Dep't of Pub. Welfare, 1 A.3d 988, 992 (Pa. Commw. Ct. 2010) (citing Borough of

Bedford v. Dep't of Envtl. Prot., 972 A.2d 53, 61-62 (Pa. Commw. Ct. 2009)).  It is

undisputed that the BMC did not invoke the procedures outlined in the CDL when

_____

      [7] It is irrelevant whether the BMC is an administrative agency within the
executive branch or a legislative agency.  See Commonwealth v. Sessoms, 532 A.2d
775, 780 (Pa. 1987) ("[J]ust as executive branch agencies exist to carry out functions
committed to the executive power, that is, executing or administering the law, a
'legislative agency' has as its purpose the furtherance of some aspect of the
legislative power.").  In Sessoms, the Pennsylvania Supreme Court found that the
General Assembly properly created the Pennsylvania Commission on Sentencing to
act as a legislative agency rather than an administrative agency.  Id.  The court in
Sessoms, however, clearly stated that, similar to an administrative agency, the
Commission's sentencing guidelines could not have the effect of law without
enabling authority.  Id. at 780-81.

it created the Manual.  (See Doc. 19 at 16 n.6; Doc. 22 at 19).  Consequently, the

Manual is not entitled to the force and effect of law.[8]

    As such, Plaintiffs' reliance on the non-binding provisions of the Manual is

misplaced.  The court finds that Plaintiffs are at-will employees who have no

protected property interest in their employment.  Therefore, the court will grant the

motion to dismiss counts I, IV, and VII of the amended complaint with respect to

property interests.

### b.    Liberty Interest

    Plaintiffs also claim that Barbush deprived them of a liberty interest in their

reputations by publicly accusing them of covering up Marhon's criminal history.

(Doc. 11 ¶¶ 37, 39, 48, 65, 112, 158).  In Wisconsin v. Constantineau, 400 U.S. 433

(1971), the Supreme Court held that an individual has a protected liberty interest in

reputation.  Id. at 437.  "Where a person's good name, reputation, honor, or

integrity is at stake because of what the government is doing to him, notice and an

---

    [8] Moreover, the Manual contains an express disclaimer, which states that:
"Employment is at the will of the House of Representatives, and either the House or
the employee may at any time terminate the employment relationship with or
without cause.  Written or oral statements made to the employee are not to be
interpreted in any way that alters the at-will relationship."  (Doc. 19-1).  Plaintiffs
maintain that the presence of the due process and disciplinary procedures in the
Manual overrides this disclaimer.  (Doc. 22 at 11-12).  Yet, these same provisions
state that certain misconduct "may result immediately in termination or other
severe discipline" and that "[n]othing herein shall be construed as to limit the BMC
prerogative to terminate an employee at will at anytime."  (Doc. 22-2 at 5).
Therefore, even if the Manual were to be construed as having the full force and
effect of law, by its terms, it would not alter the at-will relationship between
Plaintiffs and the PA House.

opportunity to be heard are essential." Id. However, subsequent cases have established that "reputation alone is not an interest protected by the Due Process Clause." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1989) (citing Paul v. Davis, 424 U.S. 693, 711-12 (1976)). To assert a due process claim for a liberty interest in reputation, a plaintiff must show "a stigma to his reputation *plus* deprivation of some additional right or interest." Hill, 455 F.3d at 236 (stating that, in the public employment context, "the creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'").

To satisfy the "stigma" requirement, the stigmatizing statements must have been made publicly and must be false. Hill, 455 F.3d at 236; see Brown v. Montgomery Cnty., 470 F. App'x 87, 91 (3d Cir. 2012) (stating that, in order to establish the "stigma" prong, plaintiff must show "1) publication of 2) a substantially and materially false statement that 3) infringed upon [plaintiff's] 'reputation, honor, or integrity'" (citation omitted)). However, "no liberty interest of constitutional significance is implicated when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." Brown, 470 F. App'x at 91 (quoting Mercer v. Cedar Rapids, 308 F.3d 840, 845 (8th Cir. 2002)); Young v. Kisenwether, 902 F. Supp. 2d 548, 558 (M.D. Pa. 2012); Poteat v. Harrisburg Sch. Dist., 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999) ("Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge").

Plaintiffs' amended complaint fails to adequately plead the stigma requirement because Barbush's statements only accuse Plaintiffs of neglecting duty and malfeasance in their job performance.  (See Doc. 24 at 6-7).  On more than one occasion, Barbush questioned why he was not previously informed of Marhon's criminal history and purportedly accused Frederick and Meskunas of covering up the information in the presence of their colleagues.  (Doc. 11 ¶¶ 15-17, 36-37, 44-48).  According to the amended complaint, such failure to report or even hiding a criminal record from Barbush as Chief Clerk did not violate any internal policy or statutorily imposed duty.  (Id. ¶¶ 18-20, 47).  At most, Barbush implies that Frederick and Meskunas neglected their duty in supervising the LSOs.  Without more, such accusations related to job performance fail to stigmatize Plaintiffs.  See Chinoy v. Pa. State Univ., No. 11-CV-01263, 2012 WL 727965, at *5 (M.D. Pa. Mar. 6, 2012) (dismissing plaintiff's due process claim because statements regarding professional competence were insufficient to satisfy stigma requirement); Kohn v. Sch. Dist. of Harrisburg, 817 F. Supp. 2d 487, 498-99 (M.D. Pa. 2011) (dismissing due process claim because defendant's accusations regarding plaintiff's criminal conduct in connection with job performance were not stigmatizing); cf. Hill, 455 F.3d at 231, 236 & n.16 (finding that plaintiff satisfied the stigma requirement when defendant accused him of criminal actions, including "'irregular or illegal' allocations of funds"); Bartholomew v. Fischl, 782 F.2d 1148, 1150 (3d Cir. 1986) (denying motion to dismiss because public accusations of theft, coupled with termination, deprived plaintiff of a liberty interest).  For this reason, the court finds

18

that Plaintiffs fail to sufficiently allege a protected liberty interest in their reputations under the Due Process Clause of the Fourteenth Amendment. Accordingly, the court will grant Barbush's motion to dismiss counts I, IV, and VII of the amended complaint.

> ### ii.   *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws. " U.S. CONST. amend. XIV, § 1.  It is a direction that all individuals similarly situated be treated alike.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

Two principal theories exist upon which a plaintiff may assert an equal protection claim.  The traditional theory protects a plaintiff from intentional discriminatory treatment based on membership in a protected class, such as gender or race.  See, e.g., Cleburne Living Ctr., 473 U.S. at 440-42; McLaughlin v. Florida, 379 U.S. 184, 192 (1964); Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2005) (citing Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992)).  In contrast, under the class-of-one theory, a plaintiff may set forth an equal protection claim absent protected-class status when the plaintiff has been intentionally treated differently than similarly situated individuals without any rational basis.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The parties dispute the nature of the equal protection claims.  The amended complaint alleges that Barbush maliciously discharged Plaintiffs for challenging or

threatening his authority.  (Doc. 11 ¶¶ 75-76, 81, 122-23, 126, 167).  Barbush argues that Plaintiffs are pursuing a class-of-one claim because Plaintiffs do not allege that they are members of any protected class.  (Doc. 19 at 12).  Plaintiffs, on the other hand, assert that their claims are fall under the traditional theory of equal protection because the Equal Protection Clause protects more than invidious classifications, such as race and gender; it prevents any arbitrary classification without a rational basis.  (Doc. 22 at 14-15) (citing Rivera v. Lebanon Sch. Dist., 825 F. Supp. 2d 561, 565 (M.D. Pa. 2011)).

### a.   <u>Class-of-One Theory</u>

In Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), the Supreme Court held that a plaintiff may not assert an equal protection claim based on the class-of-one theory in the public employment context.  Id. at 605-07 ("In concluding that the class-of-one theory of equal protection has no application in the public employment context . . . we are guided, as in the past, by the 'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" (quoting Connick v. Myers, 461 U.S. 138, 143 (1983))); see Skrutski v. Marut, 288 F. App'x 803, 809 (3d Cir. 2008); Reed v. Chambersburg Area Sch. Dist., 951 F. Supp. 2d 706 (M.D. Pa. 2013).  The Court's decision in Engquist clearly forecloses Plaintiffs' equal protection claim under the class-of-one theory because Plaintiffs were public employees of the PA House.

### b.   <u>Selective Enforcement Theory</u>

The court construes Plaintiffs' equal protection claims to be based on a theory of selective enforcement because, in the amended complaint, Plaintiffs allege that Barbush selectively enforced the disciplinary policy against them out of resentment and malice.  (<u>See</u> Doc. 11 ¶¶ 75-77, 80-83, 122-28, 167, 170).  In the public employment context, equal protection claims are based on a theory of selective enforcement when there is evidence of a discriminatory purpose underlying government conduct.  <u>See</u> <u>Snowden v. Hughes</u>, 321 U.S. 1, 8-9 (1944); <u>PG Publ'g Co. v. Aichele</u>, 705 F.3d 91, 115 (3d Cir. 2013).  For a selective enforcement claim, a plaintiff must demonstrate (1) that he or she was treated differently from other similarly situated individuals, and (2) that the "selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right."  <u>Dique v. N.J. State Police</u>, 603 F.3d 181, 184 n.5 (3d Cir. 2010) (quoting <u>Hill v. City of Scranton</u>, 411 F.3d 118, 125 (3d Cir. 2005)) (internal quotations omitted); <u>Dombrosky v. Stewart</u>, No. 3:10-1477, 2012 WL 3686779, at *6 (M.D. Pa. Aug. 27, 2012).

### 1.   *Similarly-Situated Individuals*

When alleging the existence of similarly situated individuals, Plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and  "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal.  <u>Young v. New Sewickley Twp.</u>, 160 F. App'x 263, 266 (3d Cir. 2005) (citing

Evancho, 423 F.3d at 354-55); see also Twombly, 550 U.S. at 561 (requiring more

than a "wholly conclusory statement of claim" to survive a motion to dismiss).

Instead, Plaintiffs must identify similarly situated individuals and allege "occasions

or circumstances" of differential treatment.  Young, 160 F. App'x at 266; see also

Twombly, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with

legal allegations in complaint to survive dismissal).

In the amended complaint, Frederick and Meskunas fail to identify any

individuals who are similarly situated or, in other words, "alike in all relevant

aspects."  Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008) (citation

omitted).  Frederick and Meskunas merely allege that "[i]t is believed that Mr.

Barbush afforded due process to other, similarly situated individuals who had been

disciplined but who had not been associated with the 'cover up' and the perceived

challenges to his authority."  (Doc. 11 ¶¶ 82, 127).  Frederick and Meskunas do not

explain how other individuals are similarly situated, nor do they mention any

situations where Barbush treated other individuals differently.  The allegations in

the amended complaint are little more than "bald assertions" that do not allege

"occasions and circumstances" of differential treatment.  See Young, 160 F. App'x

at 266 (finding police officer's equal protection claim inadequate because he failed

to identify "any occasions or circumstances in which [the police chief] allegedly

treated [other] police officers in a different manner than he treated [plaintiff]");

D'Altilio v. Dover Twp., No. 1:06-CV-1931, 2007 WL 2845073, at *9 (M.D. Pa. Sept.

26, 2007) (dismissing equal protection claim when plaintiff merely alleged that

defendants created "a hostile and intimidating work environment for the Plaintiff," and that "such actions were not directed to other employees . . . who were similarly situated").

In contrast, Marhon sets forth additional allegations against Barbush that will survive dismissal.  Marhon alleges that other employees of the PA House also had criminal records, but Barbush did not terminate those employees.  (Doc. 11 ¶¶ 169-70).  Marhon properly describes similarly situated individuals whom Barbush treated differently.

### 2.   *Unjustifiable Standard*

With respect to the second element of a selective enforcement claim, Plaintiffs must provide evidence of an impermissible intent to discriminate, not merely unequal treatment without a rational basis.  See Snowden, 321 U.S. at 8; Wayte v. United States, 470 U.S. 598, 610 (1985); Jewish Home of E. Pa. v. Ctrs. for Medicare & Medicaid Servs., 693 F.3d 359, 363 (3d Cir. 2012).  The court concludes that all three Plaintiffs sufficiently allege that Barbush took selective actions against them based on unjustifiable factors.  According to the amended complaint, Barbush developed resentment and malice towards Plaintiffs and also began to harass Frederick for allegedly covering up Marhon's criminal record and threatening his authority.  (Doc. 11 ¶¶ 75-78, 122-23, 167).  Barbush acted arbitrarily on the basis of such resentment and malice when he constructively discharged or terminated Plaintiffs.  (Doc. 11 ¶¶ 81, 126, 167); see Dombrosky v. Stewart, No. 3:10-CV01477, 2010 WL 4623872, at *3 (M.D. Pa. Nov. 4, 2010) (permitting selective

enforcement claim for differential treatment motivated by defendant's personal animus towards plaintiff); cf. Earnest v. King, No. 2:11-cv-738, 2011 WL 5075380, at *8 (W.D. Pa. Oct. 24, 2011) (dismissing equal protection claims when plaintiffs did not allege any discriminatory purpose for disparate treatment other than *unalleged* personal animus).

Accordingly, the court finds that Marhon adequately pleads a claim for selective enforcement.  The court will grant the motion to dismiss with respect to the equal protection claims in counts II and V, and deny the motion with respect to the equal protection claim in count VIII of the amended complaint.  However, the court will permit Frederick and Meskunas to amend their equal protection claims to the extent they can allege the existence of similarly situated individuals or similar situations which Barbush handled differently.

### B.    Wrongful Discharge

Barbush asserts that the court should dismiss the wrongful discharge claims in counts III and VI because of Plaintiffs' status as at-will employees.  (Doc. 19 at 13-20).  The court agrees.

As previously discussed, the employment at-will doctrine under Pennsylvania law allows employers to terminate employees "for any or no reason" unless a written contract exists between the parties.  Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (quoting Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974)); Hershberger v. Jersey Shore Steel Co., 575 A.2d 944, 946 (Pa. Super Ct. 1990) ("[A]n at-will employment environment is the norm . . . thus, an employee can be

terminated for good reason, bad reason, or no reason at all." (citing <u>Henry v.</u>

<u>Pittsburgh & Lake Erie R.R. Co.</u>, 21 A. 157 (Pa. 1891))).  There is no common law

cause of action for wrongful discharge of an at-will employee.  <u>Shick</u>, 716 A.2d at

1233; <u>see</u> <u>also</u> <u>Bell</u>, 892 F. Supp. 2d at 690.   However, the Pennsylvania Supreme

Court has carved out a narrow exception to the employment at-will doctrine: an

employee may bring a common law wrongful discharge action for at-will

employment if he or she can demonstrate that the discharge violates "clear

mandates of public policy."  <u>Bell</u>, 892 F. Supp. 2d at 690 (quoting <u>Clay v. Advanced</u>

<u>Computer Applications, Inc.</u>, 559 A.2d 917, 918-19 (Pa. 1989)).

Courts apply this public policy exception only to "significant and recognized

public policies."  <u>Yetter v. Ward Trucking Corp.</u>, 585 A.2d 1022, 1026 (Pa. Super Ct.

1991); <u>see</u> <u>Burkholder v. Hutchison</u>, 589 A.2d 721, 723-24 (Pa. 1991) (A clear mandate

of public policy must "strike[] at the heart of a citizen's social right, duties and

responsibilities." (quoting <u>Novosel v. Nationwide Ins. Co.</u>, 721 F.2d 894, 899 (3d Cir.

1983))); <u>Paul v. Lankenau Hosp.</u>, 569 A.2d 346, 348 (Pa. 1990) ("Exceptions to [the at-

will employment] rule have been recognized in only the most limited of

circumstances." (quoting <u>Clay</u>, 559 A.2d at 918)).  Generally, courts will not

recognize a public interest as a clear mandate of public policy in the "absence of a

legislative or constitutional . . . prohibition, requirement or privilege."  <u>Clark v.</u>

<u>Modern Grp. Ltd.</u>, 9 F.3d 321, 328 (3d Cir. 1993) (quoting <u>Smith v. Calgon Carbon</u>

<u>Corp.</u>, 917 F.2d 1338, 1344 (3d Cir. 1990)).  Other sources of clear public policy

mandates include: "legislation; administrative rules, regulation, or decision; and

judicial decision." <u>Yetter</u>, 585 A.2d at 1026 (citation omitted); <u>see</u> <u>also</u> <u>Murray v.</u>

<u>Gencorp, Inc.</u>, 979 F.Supp. 1045, 1047-48 (E.D. Pa. 1997).  Thus far, application of

the public policy exception has been limited to situations in which an employer "(1)

requires an employee to commit a crime; (2) prevents an employee from complying

with a statutorily imposed duty; and (3) discharges an employee when specifically

prohibited from doing so by statute."  <u>Tanay v. Encore Healthcare, LLC</u>, 810 F.

Supp. 2d 734, 738 (E.D. Pa. 2011).

In the instant case, Plaintiffs identify three sources of public policy that

Barbush purportedly violated through the constructive discharge of Frederick and

Meskunas.  First, Frederick asserts that Barbush required him to commit a crime

by taking away all firearms from the LSOs in violation of the Action in Writing.

(Doc. 11 ¶¶ 92-93).  Second, Frederick and Meskunas allege that Barbush

discharged them for attempting to comply with the standard policies and

procedures in the Manual.  (<u>Id.</u> ¶¶ 96-97, 137-42).  As previously noted, Plaintiffs

contend that the Action in Writing and the Manual have the full force and effect of

law.  (<u>Id.</u> ¶¶ 92, 96, 138, 142).  Third, Frederick avers that Barbush discharged him

for opposing Marhon's termination without due process in violation of the

Fourteenth Amendment.  (<u>Id.</u> ¶¶ 94-95).

The court finds these arguments unpersuasive.  For the reasons previously

discussed, the court finds that the Action in Writing and Manual do not have the

force and effect of law.  Instead, the Action in Writing and Manual are merely

internal policies and procedures of the PA House and, as such, they do not

constitute a clear mandate of public policy.  See Randler v. Kountry Kraft, Inc., No.

1:11-CV-474, 2011 WL 5040787, at *4 (M.D. Pa. Oct. 24, 2011) (declining to extend the

public policy exception to nepotism prohibited by select state agency handbooks);

see also Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (noting that a court may

declare what is in accord with public policy "only when a given policy is so

obviously for or against public health, safety, morals, or welfare that there is a

virtual unanimity of opinion in regard to it" (citation omitted)).  Hence, Plaintiffs'

first two arguments for a public policy exception are unfounded.

    Turning to the third argument, Frederick alleges that Barbush constructively

discharged him for opposing Marhon's termination in violation of the right to due

process.  (Doc. 11 ¶¶ 94-95).  This argument is also unavailing for several reasons.

First, both federal and state courts in Pennsylvania are disinclined to apply the

public policy exception broadly to find a cause of action based solely upon

constitutional protections.  See Bell, 892 F. Supp. 2d at 691; Dewees v. Haste, 620 F.

Supp. 2d 625, 639-40 (M.D. Pa. 2009); see also Clark, 9 F.3d at 331-32 (stating that

the public policy exception does not exist to protect the employee; rather, it exists to

protect society from public harm or to vindicate fundamental rights); McLaughlin v.

Gastrointestinal Specialists, Inc., 750 A.2d 283, 289 (Pa. 2000) ("Plaintiff must do

more than show a possible violation of a federal statute that implicates her own

personal interest. The Plaintiff in some way must allege that some *public* policy of

*this* Commonwealth is implicated, undermined, or violated because of the

employer's termination of the employee.").  Frederick offers no reason for a public

policy exception based on the right to due process other than mere violation of federal law.  (See Doc. 11 ¶ 95); cf. Reuther v. Fowler & Williams, Inc., 386 A.2d 119, 121 (Pa. 1978) (holding that, in addition to the Sixth Amendment right to trial by jury, the need for citizens freely available for jury service without potential discharge from employment is a recognized public policy).

Second, when an employer is engaging in an illegal activity and coerces its at-will employees to participate in that activity, an employee may bring a wrongful discharge claim against the employer on the basis of a public policy exception in favor of exposing unlawful activities.  Clark, 9 F.3d at 331.  However, when an at-will employee's discharge is based on a disagreement with the employer about the *legality* of a proposed course of action, the employee may not assert a wrongful discharge claim unless such action *in fact* violates the law.  Id. at 328.  Although Frederick believed that Marhon's termination without an opportunity to be heard violated due process, Plaintiffs were at-will employees of the PA House.  Pursuant to the employment at-will doctrine, Marhon was not entitled to due process prior to termination.  See Bell, 892 F. Supp. 2d at 658 n.8 ("[A]t-will employees . . . have no due process rights prior to termination.").  Thus, Frederick cannot allege a public policy violation based merely on his disagreement with Marhon's termination.

Finally, the Third Circuit has recognized that "the only Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available."  Bruffett v. Warner Commc'ns Inc., 692 F.2d 910, 919 (3d Cir. 1982); see Bell, 892 F. Supp. 2d at 691 (declining to extend public policy exception for

alleged violations of free speech and association when plaintiff could assert a

Section 1983 action for violation of federal constitutional rights).  In this case,

Plaintiffs, including Marhon, have already availed themselves of recognized causes

of action under 42 U.S.C. § 1983 for the purported violation of their due process and

equal protection rights.  (Doc. 11 ¶¶ 145-161).  For all of these reasons, the court

finds that Plaintiffs fail to identify a viable public policy exception to Pennsylvania's

employment at-will doctrine.  Therefore, the court will dismiss counts III and VI of

the amended complaint with prejudice.

### C.      Promissory Estoppel

In count IX, Plaintiffs seek to hold Barbush liable under the doctrine of

promissory estoppel.  Under Pennsylvania law, the doctrine of promissory estoppel

allows the court to enforce promises unsupported by consideration when "(1) the

promisor makes a promise that he reasonably expects to induce action or

forbearance by the promisee, (2) the promise does induce action or forbearance by

the promisee, (3) and injustice can only be avoided by enforcing the promise."

Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (citing

Cardamone v. Univ. of Pittsburgh, 384 A.2d 1228, 1233 (Pa. Super. Ct. 1978)).

In Paul v. Lankenau Hospital, 569 A.2d 346 (Pa. 1990), the Pennsylvania

Supreme Court expressly rejected a cause of action for promissory estoppel for

termination of at-will employment.  Id. at 95 ("The doctrine of equitable estoppel is

not an exception of the employment at-will doctrine.  An employee may be

discharged with or without cause, and our law does not prohibit firing an employee

for relying on an employer's promise."); see also Dyche v. Bonney, 277 F. App'x 244, 246 & n.1 (3d Cir. 2008) (noting that Paul applies to claims of promissory estoppel); McCarthy v. Luzerne Cnty., No. 3:11-CV-0096, 2011 WL 2607174, at *5 (M.D. Pa. July 1, 2011) ("[A] theory of promissory estoppel is not legally cognizable against an employer in Pennsylvania as relates to discharge."). Thus, as at-will employees, Plaintiffs may not bring a claim for promissory estoppel based on their discharge.

Plaintiffs assert that the promissory estoppel claim does not stem from their discharge from at-will employment; rather, the claim arises out of representations regarding due process and equal treatment in the Manual. (Doc. 22 at 16). The court rejects this argument. Both state and federal courts have construed the decision in Paul to also preclude a promissory estoppel claim based on detrimental reliance on an employer's past policies or promises. See, e.g., Anderson v. Haverford Coll., 851 F. Supp. 179, 183-84 (E.D. Pa. 1994); Raines v. Haverford Coll., 849 F. Supp. 1009, 1013-14 (E.D. Pa. 1994); Ruzicki v. Catholic Cemeteries Ass'n of the Diocese of Pittsburgh, 610 A.2d 495, 498 (Pa. Super. Ct. 1992) (rejecting allegations that the employee handbook gave plaintiff a reasonable expectation that employer would only terminate him pursuant to its due process provisions). Therefore, Plaintiffs may not evade the strictures of the employment at-will doctrine and bring a promissory estoppel claim based on either their discharge from at-will employment or alleged reliance on the PA House's internal policies.

Lastly, Plaintiffs allege that Paul and its progeny only foreclose promissory estoppel claims against employers, but that Plaintiffs may assert their claim against

Barbush as their supervisor.  (Doc. 22 at 16).  However, Plaintiffs do not provide any legal support for a viable promissory estoppel claim based on a distinction between an employer and a supervisor.  Moreover, Plaintiffs essentially equate Barbush with their employer by asserting that, as a member of the BMC, Barbush should be held liable for the representations made in the BMC's Manual.  (Id. at 16-17).  Because Plaintiffs collapse any purported distinction between supervisor and employer, the court declines to adopt any such distinction to allow the promissory estoppel claim against Barbush.  Accordingly, the court will dismiss count IX of the amended complaint with prejudice.

## IV.    **Conclusion**

For the foregoing reasons, the court will grant Barbush's motion to dismiss (Doc. 18) in part and deny it in part with limited leave to amend.

An appropriate order follows.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:      March 4, 2014